## West *vs.* McGurn.

Upon an appeal to a county judge from the decision &c. of a jury, certifying to the necessity of a private road, and from an order of commissioners of highways laying out such road, the county judge has authority to dispose of the appeal in the manner prescribed by statute in respect to public roads; which includes the power to appoint referees to hear such appeal.

COMMON law certiorari issued by the supreme court on the application of Robert West, directed to the county judge of Columbia county, to remove into this court proceedings before referees who were appointed by the county judge of Columbia county in relation to laying out a private road

West *v.* McGurn.

through the lands of said West, upon the application of McGurn and for his benefit. After the application of McGurn, a jury was summoned, who certified the necessity of the road and assessed the damages. Whereupon the commissioners of highways of the town of Canaan, in the said county of Columbia, laid out the road, and filed their order to that effect, on the 5th day of August, 1863. West appealed from the decision &c. of the jury, and the order of the commissioners, to the county judge of Columbia county, who, on the 7th day of October, 1863, appointed three referees to hear such appeal. Upon the application of McGurn the certiorari was allowed by a justice of this court, and in obedience thereto the county judge of Columbia county made a return of the proceedings to this court.

*H. N. Wright*, for McGurn.

*C. L. Beale*, for West.

*By the Court*, INGALLS, J. The important question to be determined is, whether the county judge was authorized to appoint the referees to hear said appeals. And it is a question not without serious difficulty, occasioned by imperfect legislation, which is much to be regretted upon so important a subject.

The constitution of this state provides as follows: "Private roads may be opened *in the manner to be prescribed by law*, but in every case the necessity of the road and the amount of all damages to be sustained by the opening thereof shall be first determined by a jury of freeholders, and such amount, together with the expenses of the proceeding, shall be paid by the person to be benefited."

In 1853, an act was passed by the legislature, prescribing the manner in which private roads were to be laid out. This court, at general term, in *The People* v. *Robinson*, (29 *Barb.* 77,) decided that there was no appeal from the order of the

commissioners of highways laying out a private road, and that the county judge had no power to appoint referees; which decision was made in 1858. In 1860, the legislature passed an act amending the act of 1853, containing the following provision: "And if any person shall consider himself aggrieved by the decision of the freeholders, either in laying out or closing a road, he may within sixty days after such determination shall have been filed in the office of the town clerk, appeal to the county judge of the county in the same manner as appeals were heretofore allowed to be made to three judges under title 1, article 4, chapter 16, part first of the revised statutes." This provision was in relation to private roads. Pursuant to this statute the appeal in question was brought to the county judge who appointed the referees. No question is raised as to the regularity of the proceedings up to the appointment of the referees. But it is contended on the part of McGurn that the legislature has entirely omitted to prescribe the manner in which the appeal is to be disposed of, and hence the appeal is ineffectual for any purpose; and that the appointment of the referees was without authority and void. While it is not the province of the courts to legislate, it is their duty to so construe a statute as to carry out the intention of the legislature, if possible, without violating a positive law. This is a remedial statute, and as such entitled to a liberal construction. (1 *Kent's Com.* 466.)

Statutes that are remedial, and not penal, are to receive an equitable interpretation, by which the letter of the act is sometimes restrained, and sometimes enlarged, so as more effectually to meet the beneficial end in view, *and prevent the failure of the remedy.* They are to be construed liberally, and *ultra* not *contra* to the strict letter. (*Smith's Com. on Statutes, &c.* § 480. *The People* v. *The Utica Ins Co.,* 15 *John.* 380.) "Such construction ought to be put upon a statute as may *best answer the intention which the makers had in view.* And this intention is sometimes to be *collected*

West *v.* McGurn.

*from the cause or necessity of making* the statute, and sometimes from other circumstances ; and whenever such intention can be discovered, it ought to be followed with reason and discretion in the construction of the statute, although such construction seems contrary to the letter of the statute." " A thing that is within the intention of the maker of a statute is as much within the statute as if it were within the letter. And such construction ought to be put upon it as does not *suffer it to be eluded."* (*Smith's Com. on Stat. &c.* § 464.) " If there happens to be omitted in a law any thing that is essential to it, or is a necessary consequence of its disposition, and that tends to give the law its entire effect according to its motive, *we may in this case supply what is wanting in the expression, and extend the disposition of the law to what is included within its intention, although not expressed in words."* (1 *Kent's Com. p.* 463.) " Whenever a power is given by a statute, *every thing necessary to the making it effectual, or requisite to attain the end, is implied."* (*Id.*) " Several statutes *in pari materia* and relating to the same subject, are to be taken together and compared in the construction of them, because they are considered as having one object in view, and as acting upon one system, and the rule applies, though some of the statutes may have expired and are not referred to in the other acts." (*Smith's Com.* § 338.) " *So too, when one statute was undoubtedly under the consideration of the legislature when passing another,* the former ought, although long since repealed, to be taken into consideration in construing the latter statute, and that for the reason, that it is a rule in the construction of statutes that all which relate to the same subject, notwithstanding some of them may have expired or are not referred to, must be taken *to be one system and* construed consistently, and the practice has always been so." (*Id.* §§ 639, 640.)

I have thus referred to several well established rules which are to be applied in the construction of statutes like the one

under consideration, and by which we must be governed in determining this case. The legislature, by the act of 1860, intended to secure to the party aggrieved a right of appeal to the county judge, and must have intended to vest in the county judge all the power necessary to accomplish the object intended. (1 *Kent's Com. p.* 463.) "Whenever a power is given by a statute, every thing necessary to the making of it effectual or requisite to attain the end, is implied." This court is authorized, in order to effectuate the obvious intention of the legislature, and to render the statute operative in a case like the one under consideration, where the proceeding is to take the property of the party seeking the remedy by appeal, to carry the doctrine of implication to its utmost verge, short of legislating. Title 1, article 4, chapter 16, part 1 of the revised statutes applied as well to private as to public roads, and, as has been seen, the legislature must be presumed to have taken that fact into consideration when the act of 1860 was passed.

By the act of 1847, (*Sess. Laws of* 1847, *p.* 584, § 8,) appeals from the determination of commissioners of highways in laying out or refusing to lay *out any road* are to be made to the county judge instead of the judges of the common pleas. And it will be observed that the same act also contains provisions relative to *private roads.* Section 8, which provides for an appeal to the county judge, uses the words, "any roads;" also in § 9, the same expression occurs; in other parts of the act the word "highway" is used. Without intending to question the correctness of the decision in 29 *Barb.* 77,. above referred to, I allude to the above facts for the purpose of showing that the legislature, when they passed the act of 1860, must be presumed to have had in view those various statutes and the provisions above referred to, and evidently intended by the act of 1860, to confer upon the county judge the same powers in regard to the disposal of appeals in reference to private roads as was conferred by the act of 1847, in reference to public roads. The reference to

the revised statutes, in the act of 1860, in regard to the manner of appeal, was for the purpose of brevity; thereby avoiding the insertion of all those provisions in the act of 1860, and with the manner of appeal evidently intended to carry along the same manner of disposing of the appeal as was provided by the act of 1847, in reference to public roads; having in view as well the provision of the act of 1847, as to the appointment of referees, as the provision of the revised statutes as to the mode of appeal. I therefore conclude that the legislature intended that the county judge, having acquired jurisdiction by the appeal, became vested with the same authority to dispose of such appeal in the manner provided in reference to public roads, which includes the power to appoint referees. I think this view is authorized by the rules of construction to which I have referred. And if so, the whole proceeding is harmonious, and the obvious intention of the legislature to secure a perfect appeal and the disposition thereof, is accomplished. Otherwise the act of 1860 is wholly inoperative, and embarrasses rather than aids the party whose rights are sought to be protected.

The writ of certiorari should be superseded, and the referees directed to proceed.

[ALBANY GENERAL TERM, December 5, 1864. *Peckham, Miller* and *Ingalls,* Justices.]